# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

REVEREND NDUDI BENSON ADU,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Civil Action No.:

## COMPLAINT

Plaintiff Reverend Ndudi Benson Adu files this action for damages against Defendant United States of America pursuant to the Federal Tort Claims Act.

## INTRODUCTION

1. Reverend Ndudi Benson Adu ("Adu" or "Plaintiff") is a young Christian pastor, who fled his native Nigeria after running afoul of the terrorist organization Boko Haram. Terrorists repeatedly attacked Adu, coming to his home to kill him because of his speech related to his ministry and tracking him throughout the country.

2. Adu obtained a visa and came to the United States to seek asylum.

3. He was then incarcerated for over five years because the United States of America found his claim for asylum not credible.

4. During this detention, Adu's wife and son were shot to death by Boko Haram in one attack, and his father was beaten to death with rifles in another.

5. Following repeat trips to the Eleventh Circuit Court of Appeals, Adu's asylum claim is still being litigated. *See Adu v. United States Atty. Gen.*, 785 Fed. Appx. 776 (11th Cir. 2019).

6. Regardless of the validity of Adu's asylum claim, much of Adu's detention was unlawful.

7. As a result, this Court granted Adu's petition for habeas corpus. *See Adu v. Bickham*, 7:18-cv-103-WLS-MSH, Doc. 69 (M.D. Ga. February 15, 2019) (adopting report and recommendation and granting petition).

8. Because the United States of America's detention of Adu violated the United States Constitution, as well as various duties imposed by the tort law of the state of Georgia, Adu can bring suit via the Federal Tort Claims Act.

9. This is Adu's claim, in which he seeks redress for unimaginable harms suffered and accountability for constitutional wrongs.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FTCA claims pursuant to 28 U.S.C. § 1346(b) and §§ 2671 *et seq*.

11. On November 6, 2019, Plaintiff sent his administrative tort claim, via a Standard Form 95 and accompanying documentation, to Immigration and Customs Enforcement ("ICE"), the Department of Homeland Security ("DHS"), and Customs and Border Protection ("CBP").

12. On February 20, 2020, counsel for the Office of the Principal Legal Advisor to DHS and ICE issued a final denial of Plaintiff's claim.

13. Pursuant to 28 U.S.C. § 2401(b), Plaintiff files this action within six months of the denial of his claim.

14. Venue is proper within this District and division pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

## PARTIES

15.     Plaintiff Reverend Ndudi Benson Adu, following his release from custody, has been residing with family in Forsyth County, Georgia.

16.     Defendant United States of America is liable to the same extent as a private individual for the tortious acts and omissions of its officers and agents committed during the performance of their official duties. The acts of malfeasance and nonfeasance for which the United States of America is liable were committed by a range of officials of ICE, DHS, and/or CBP, all of whom acted within the course and scope of their employment as law enforcement agents of the United States of America.

## FACTS

### *Adu's Ministry in Nigeria and Retaliation by Boko Haram*

17.     Adu is a citizen of Nigeria.

18.     In his native Nigeria, Adu worked as a pastor in his Pentecostal faith.

19.     In 2013, as part of this work, Adu travelled to northern Nigeria to preach, during which time he criticized Boko Haram, a militant Islamist terrorist organization that was ascendant in the region.

20.     As a direct result of his religious and political speech, Adu was kidnapped, physically abused, threatened with death, and warned never to practice his faith again.

21.     After being discharged from the hospital in the aftermath of his kidnapping, Adu relocated to a different home in the region.

22.     A week later, Boko Haram militants found Adu at his new home where they advised Adu he had been warned not to practice his faith and that they were at his home to kill him.

23. Adu escaped from the home through a window, and then fled to Lagos, in southern Nigeria.

24. After reporting the incident to law enforcement in Lagos, Adu was advised that he needed to take all possible precautions to prevent from being seen by Boko Haram anywhere in Nigeria.

25. Adu, with help from his church, then obtained a two-year visa to travel to the United States.

26. Shortly thereafter, groups of Islamist terrorists repeatedly sought out Adu in Lagos.

27. First, a group came to his home in Lagos and spoke with Adu's wife, who reported that Adu was not home.

28. Two members of that group later returned when Adu was home, taking a shower. Adu's wife was beaten in a scuffle, and the two intruders ultimately ran away.

29. After that second incident at their home in Lagos, Adu's wife fled to the town where she grew up, approximately six hours away by automobile, and Adu stayed briefly with the senior pastor in his church.

30. Boko Haram continued to search for and find Adu: at both of these new locations, Muslims came to the door, trying to find Adu.

*Adu's Arrival in the United States and his Extended Indefinite Detention*

31. Following these repeated threats on his life, which took place in parts of the country separated by hundreds of miles, Adu acquired a plane ticket from Nigeria to Pennsylvania.

32. Adu arrived on American soil November 13, 2013.

33. Adu told a customs officer that he was fleeing Boko Haram and seeking asylum.

34. Adu was detained without bail from November 13, 2013 until his petition for habeas corpus was granted February 15, 2019.

35. After Adu fled to the United States, Boko Haram sent threats to his church repeatedly.

36. During one phone call, the senior pastor was informed that there was a bounty offered to anyone that would kill Adu and his family.

37. During the time he was incarcerated, and because Boko Haram could not reach Adu, the terrorists killed Adu's family.

38. In one attack, in 2014, while Adu's wife was driving their son home from school, Boko Haram terrorists pulled alongside her vehicle, shooting and killing her and their son.

39. In another attack, Adu's father, who had previously offered testimony in support of Adu's claim for asylum, was beaten to death by armed Boko Haram militants.

*Adu's Prolonged and Indefinite Detention Following his First Final Removal Order*

40. Adu first became subject to a final order of removal on December 23, 2014.

41. The Due Process Clause of the United States Constitution prohibits the detention of an immigrant subject to a final order of removal for longer than six months if there is no significant likelihood of removal in the reasonably foreseeable future. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001).

42. Adu was held longer than six months after the final removal order of December 23, 2014.

43. During the period beginning six months after the December 2014 final removal order, Adu's removal was not significantly likely in the reasonably foreseeable future because

his case was pending in the Eleventh Circuit and Adu would have availed himself of possible review in the United States Supreme Court to prevent his forced relocation to Nigeria, where he would have very likely been assassinated by terrorists.

44. On May 23, 2016, the Eleventh Circuit Court of Appeals remanded Adu's removal order for consideration of additional evidence, namely, the 2014 murder of his wife and child.

*Adu's Prolonged and Indefinite Detention Following his Second Final Removal Order*

45. On May 17, 2017, Adu was subjected to a second final removal order.

46. On September 20, 2017, the Eleventh Circuit Court of Appeals granted a stay of removal pending substantive adjudication of his appeal.

47. As of Adu's release from custody following his granted petition of habeas corpus on February 15, 2017, Adu had not received a determination from the Eleventh Circuit Court of Appeals.

48. Adu provided facts and representations showing that his detention beyond six months after the May 2017 final removal order was not significantly likely to occur in a reasonably foreseeable timeline.

49. These facts included those regarding his history of detention, the Eleventh Circuit's adjudication, as well as a representation that upon any unfavorable outcome, Adu would seek certiorari in the United States Supreme Court, which would take between 90 and 150 days, at minimum.

50. The Eleventh Circuit did not rule on Adu's appeal until September 18, 2019.

51. The Eleventh Circuit's decision vacated the determination that Adu had not established entitlement to asylum and remanded for consideration of whether the government

had adequately met its burden of showing that Adu could reasonably relocate safely if he were returned to Nigeria.

52. Adu was detained for approximately 38 months while subject to a final order of removal.[1]

53. In all, Adu was detained for approximately 63 months.

54. Adu has not been charged with or convicted of any crime.

55. Despite being a young man in his twenties throughout his detention, Adu suffered from serious medical conditions while in custody, which were not adequately treated according to his diagnosis and prescribed course of treatment. Specifically, Adu suffers from metabolic myopathy and was prescribed a high-protein diet.

56. As a foreseeable consequence of his unlawful detention, Adu was not regularly given his prescribed medical diet and his medical condition deteriorated, which resulted in excruciating pain and long-term damage to his health.

57. As a foreseeable consequence of his unlawful detention, Adu was unable to grieve for his murdered family in a dignified fashion.

58. The discretionary function exemption does not apply because, *inter alia*, Defendant's officers and agents' tortious actions violated the United States Constitution.

---

[1] There were 518 days between Adu's December 23, 2014 first order of removal and the Eleventh Circuit's May 23, 2016 remand, and there were 640 days between his May 17, 2017 second order of removal and his February 15, 2019 release pursuant to a granted petition for habeas corpus.

## COUNT ONE: FALSE IMPRISONMENT
## FEDERAL TORT CLAIMS ACT

59. Defendant United States of America, through the negligent, reckless, intentional, and criminal acts and omissions of its officers and agents, including ICE, DHS, and CBP personnel, caused Adu to be detained for an extended period of time.

60. Pursuant to the Due Process Clause of the United States Constitution and statute, much of Adu's detention was unlawful.

61. Adu's unlawful detention amounts to false imprisonment, which is a tort under Georgia law.

62. As a direct and proximate result of these officials' acts and omissions, Adu suffered extended loss of liberty, severe emotional distress, and other harms for which he may recover economic and compensatory damages in amounts to be determined by the enlightened conscience of the factfinder.

## COUNT TWO: NEGLIGENCE AND NEGLIGENCE PER SE
## FEDERAL TORT CLAIMS ACT

63. Defendant's officers and agents had a duty to act with reasonable care and to abide by the United States Constitution and law and to follow their own practices and procedures in detaining Adu.

64. Defendant's officers and agents breached this duty of care by detaining Plaintiff without legal authority for an extended period of time by miscalculating or misapprehending the requirements of e.g., the Due Process Clause.

65. Negligence is a tort under Georgia law.

66. As a direct and proximate result of these officials' acts and omissions, Adu suffered extended loss of liberty, severe emotional distress, and other harms for which he may

recover economic and compensatory damages in amounts to be determined by the enlightened conscience of the factfinder.

### COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### FEDERAL TORT CLAIMS ACT

67. Defendant's officers and agents engaged in the intentional and reckless detention of Adu that was clearly unlawful.

68. Defendant's officers and agents' conduct was extreme and outrageous in that Adu was detained without bail for approximately 63 months in total, despite having committed no crime and presenting himself with well-founded and compelling claims for asylum.

69. Defendant's officers and agents' conduct was also extreme and outrageous in that Adu was detained without bail while subject to a final order of removal for approximately 38 months, far beyond the six-month limit imposed by law.

70. As a direct and proximate result, Adu has suffered severe and permanent emotional distress, which includes devastating impacts to his psyche, his relationships with his family, his health, and his overall well-being.

### COUNT FOUR: BREACH OF DUTY, O.C.G.A. § 51-1-6
### FEDERAL TORT CLAIMS ACT

71. The Constitution required Defendant's officers to perform acts and refrain from performing other acts in order to ensure that Adu was not deprived of his liberty via unlawful detention.

72. Defendant's officers breached that duty which was owed to Adu.

73. As a direct and proximate result, Adu has suffered severe and permanent emotional distress, which includes devastating impacts to his psyche, his relationships with his family, his health, and his overall well-being.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

(a) Assume jurisdiction over this action;

(b) Award judgment against Defendant and for Plaintiff;

(c) Award Plaintiff economic and compensatory damages for mental and emotional distress, anxiety, humiliation, and any other injury in an amount to be determined by the enlightened conscience of the factfinder;

(d) Award Plaintiff reasonable attorneys' fees, expenses, and costs of litigation to the extent allowable under state and federal laws;

(e) Award Plaintiff pre and post-judgment interest; and

(f) Award Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted this 7th day of August, 2020.

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002

**MITCHELL & SHAPIRO LLP**
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4747
404-812-4740 (fax)
zack@mitchellshapiro.com

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878

**LAW OFFICES OF GERRY WEBER, LLC**
Post Office Box 5391
Atlanta, GA 31107
404-522-0507
wgerryweber@gmail.com