IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **REV. NDUDI BENSON ADU**, <br><br>    Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br>    Defendant. | Civil Action No. 7:20-CV-155 (HL) |

**ORDER**

Plaintiff Reverend Ndudi Benson Adu filed this lawsuit pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671 *et seq.* against Defendant the United States of America to recover damages sustained from a prolonged period in immigration detention. Defendants now move the Court to dismiss Plaintiff's claims for lack of subject matter jurisdiction, failure to timely file an administrative claim within the FTCA's two-year statute of limitations, and failure to state a claim upon which relief can be granted. For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss. (Doc. 5).

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff arrived in the United States from Nigeria on November 13, 2013. Complaint, Doc. 1, at ¶ 32. Plaintiff is a native Nigerian and pastor at a Pentecostal church. Id. at ¶ 17, 18. In 2013, Plaintiff was kidnapped, physically abused, and threatened with death by Boko Haram. Id. at ¶ 20. Militants continued to threaten

him and his family with death if he continued to practice his faith. Id. at ¶ 22, 26, 28, 30. With help from his church, Plaintiff obtained a two-year visa to travel to the United States and landed in Pennsylvania on November 13, 2013. Id. at ¶ 25, 32.

Upon landing, Plaintiff told a customs officer that he was seeking asylum.[1] Id. at ¶ 33. He was immediately taken into custody and then served with a Notice to Appear (NTA). Id. at ¶ 32, 34. Plaintiff sought asylum, but his application was initially denied by the Immigration Judge (IJ), and a final order of removal was issued on December 23, 2014. Id. at ¶ 40. Ultimately, he was detained without bail until his petition for habeas corpus was granted February 15, 2019. Id. at ¶ 34. During his detention, Plaintiff's wife, son, and father were killed by Boko Haram militants. Id. at ¶ 37, 38, 39.

Plaintiff first became subject to a final order of removal on December 23, 2014. Id. at ¶ 40. On May 23, 2016, the Eleventh Circuit Court of Appeals remanded Plaintiff's removal order for consideration of the evidence that his wife and son were murdered by Boko Haram in 2014. Id. at ¶ 44. On May 17, 2017, Plaintiff was subject to a second final removal order. Id. at ¶ 45. On September 20, 2017, the Eleventh Circuit Court of Appeals granted a stay of removal pending adjudication of his appeal. Id. at ¶ 46. Plaintiff was released from custody following his granted petition of habeas corpus on February 15, 2019. Id. at ¶ 47. On

---

[1] Plaintiff incorporates by reference this Court's final order adopting the magistrate judge's "Order and Report and Recommendation," and the Eleventh Circuit's remand order on Plaintiff's asylum application. Both Plaintiff and Defendant refer to some facts mentioned in these cases that are not in Plaintiff's complaint.

September 18, 2019, the Eleventh Circuit vacated the determination that Plaintiff had not established entitlement to asylum and remanded for consideration of whether the government had adequately met its burden of showing that Plaintiff could reasonably relocate safely if he were returned to Nigeria. Id. at ¶ 51. Plaintiff filed suit in this Court on August 7, 2020.[2]

In his Complaint, Plaintiff asserts claims for (1) false imprisonment under the Federal Tort Claims Act (FTCA); (2) negligence and negligence per se under the FTCA; and (3) Intentional Infliction of Emotional Distress under the FTCA.[3] Plaintiff alleges that the United States caused Plaintiff to be detained for an extended period of time, much of which was unlawful under the Due Process Clause of the United States Constitution. Id. at ¶ 59, 60. As a direct and proximate result of the actions of officials of Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), and Customs and Border Patrol (CBP), Plaintiff

---

[2] Plaintiff was granted asylum shortly after filing this Complaint. (Doc.7 at 3).

[3] Plaintiff also attempts to state an independent claim under O.C.G.A. § 51-1-6 (Count 4). That provision of Georgia law states:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

O.C.G.A. § 51-1-6. Standing alone, the statute creates no cause of action. Parris v. State Farm Mutual Automobile Insurance Co., 229 Ga. App. 522, 524 (1997). "Rather it simply authorizes the recovery of damages for the breach of a legal duty otherwise created." Id. Therefore, to the extent the Plaintiff tries to assert a separate cause of action it is **DISMISSED**.

suffered extended loss of liberty, severe emotional distress, and other harms. Id. at ¶ 59, 62. Additionally, Plaintiff alleges that Defendant's officers and agents had a duty to act with reasonable care and to abide by the United States Constitution and law and follow their own procedures while detaining Plaintiff. Id. at ¶ 63.

## II.   APPLICABLE LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1).

An action may proceed in this Court only if federal subject matter jurisdiction exists. Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004). Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. A party may challenge the court's subject matter jurisdiction by employing a facial or factual attack. McElmurray v. Consol. Gov't of Augusta–Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). If the defendant raises a facial attack, the district court may only look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking the facts as alleged as true. McElmurray, 501 F.3d at 1251. A factual attack challenges the existence of subject matter jurisdiction in fact and the district court may consider matters outside the pleadings. Id. The district court may then dismiss based on the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. Id.

**B. Federal Rule of Civil Procedure 12(b)(6).**

When reviewing a motion to dismiss, the court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271,1273 n.1 (11th Cir. 1999). The court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682 (1946)). Accordingly, to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**III. DISCUSSION**

Plaintiff brings claims pursuant to the Federal Tort Claims Act (FTCA), which provides a limited waiver of the United States' sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA permits claims against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Id. "The FTCA requires that *each* claim

and *each* claimant meet the prerequisites for maintaining a suit against the government." Bloodworth v. United States, No. 5:13-CV-112-MTT, 2014 WL 1813374, at *7 (M.D. Ga. May 7, 2014), aff'd, 623 F. App'x 976 (11th Cir. 2015).

Plaintiff claims (1) false imprisonment under the Federal Tort Claims Act (FTCA); (2) negligence and negligence per se under the FTCA; and (3) Intentional Infliction of Emotional Distress under the FTCA. (Doc. 1). The Government seeks to dismiss these claims because (1) the Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to 8 U.S.C. § 1252(g); (2) even if jurisdiction exists on any of Plaintiff's claims, Plaintiff failed to timely file an administrative claim within the FTCA's two-year statute of limitations; and (3) Plaintiff has failed to state any claim upon which relief may be granted.

**A. False Imprisonment**

Plaintiff claims that much of his long imprisonment was illegal under the precedent set in Zadvydas v. Davis, where the Supreme Court held that post-removal detention periods of longer than six months might be unconstitutional under the Due Process clause of the United States. 533 U.S. 678, 701 (2001). In Zadvydas, the Supreme Court stated that they "have reason to believe that Congress previously doubted the constitutionality of detention for more than six months" and recognized that period as a point when, after a showing that "there was no significant likelihood of removal in the reasonably foreseeable future" the Government must show evidence to rebut that showing. Id. They noted that the six-month presumption "does not mean that every alien not removed must be

released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Using this standard, Plaintiff claims that six months after his final notice of removal, ICE violated the Due Process cause of the Constitution by holding him without legal authority, that ICE agents and officers breached this duty of care to him by "miscalculating" the requirements of the Due Process Clause, and by doing so, caused him to suffer severe and permanent emotional distress.

Title 8 U.S.C. § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has interpreted this provision to be read narrowly and apply "only to the three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (*hereinafter* AADC). In AADC, the Supreme Court explained that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." Id.

"Federal courts lack subject-matter jurisdiction over 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'" Gupta v. McGahey, 709 F.3d 1062, 1065 (11th Cir. 2013) (quoting 8 U.S.C. § 1252(g)). Thus, § 1252(g) does not apply to other decisions or actions that "may be taken before, during, and after removal proceedings— 'such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.'" Alvarez v. U.S. Immigration & Customs Enf't, 818 F.3d 1194, 1202 (11th Cir. 2016).

Plaintiff claims he was falsely imprisoned for a period of time following his post-removal detention. During that time, he remained engaged in multiple appeals. Plaintiff relies on the narrowly tailored interpretation from the Supreme Court noting that the mention of "three discrete events along the road to deportation" could not plausibly refer to all claims arising from deportation proceedings. AADC, 525 U.S. at 482. The Government argues that Plaintiff's detention was for the purposes of securing Plaintiff "while awaiting a removal determination" and any challenge thereto falls within the scope of § 1252(g). The Court agrees. "By its plain terms," § 1252(g) bars federal courts "from questioning ICE's discretionary decisions to commence removal." Alvarez, 818 F.3d at 1203. ICE's decision to detain the Plaintiff during his removal proceedings was closely connected to the decision to

commence removal proceedings. Id.; Gupta, 709 F.3d at 1065 ("Securing an alien while awaiting a removal determination constitutes an action taken to commence proceedings."). Additionally, Plaintiff would have been held in post-removal detention for some time pursuant to his two final orders of removal, despite his appeals to the BIA and the Eleventh Circuit. Silva v. United States, 866 F.3d 938, 940 (8th Cir. 2017) (explaining that § 1252(g) applies during the periods of time in which an immigrant detainee appeals the immigration judge's removal order because "the removal order [] still existed after the administrative appeal was filed," and therefore false imprisonment in connection with the alien's continued detention is "connected directly and immediately to a decision to executive a removal order."). Therefore, these claims are exactly the claims that § 1252(g) bars from the subject-matter jurisdiction of the federal courts. Gupta, 709 F.3d at 1065. Accordingly, the Court lacks subject matter jurisdiction over these claims, and they are **DISMISSED.**

**B. Negligence**

Plaintiff claims that ICE was negligent and breached its duty of care by holding him in post-removal detention longer than six months without it being reasonably foreseeable that he would be able to be removed. Section 241(a) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a) authorizes the Attorney General to detain aliens who are subject to final orders of removal in order to effectuate their removal from the United States. 8 U.S.C. § 1231(a). In Zadvydas, the Supreme Court held that this statute only permits the detention of aliens for a

period reasonably necessary to bring about their removal from the United States. 533 U.S. at 699. The Supreme Court held that "Congress previously doubted the constitutionality of detention for more than six months." Id. at 701. For the sake of "uniform administration in the federal courts," the Supreme Court recognized a six-month period, after which an alien could challenge his removal by providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the Government would need to show evidence to rebut that showing. Id. Subsequently, the Department of Justice issued new rules spelling out the procedure required for aliens to challenge their detention. 8 C.F.R. 241.13. In these procedures, an alien can "assert[] the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. 241.13(d). INS must respond in writing in a timely manner, and a review process is initiated by an internal committee. Id.

Plaintiff alleges that ICE was negligent in "miscalculating or misapprehending the requirements of e.g. the Due Process Clause." Doc. 1 at ¶ 64. But Plaintiff fails to set forth even minimal factual detail to allege how the Government miscalculated a purported duty under the Due Process Clause, or how the Government otherwise misapprehended its constitutional obligations sufficient to adequately plead a negligence claim under Georgia law. There is nothing in the complaint to suggest that Plaintiff initiated any removal review under 8 C.F.R. 241.13. Doc. 1. Plaintiff fails to state a claim because he fails to state a breach of legal duty that proximately caused his injuries. This Court finds that

Plaintiff failed to state a claim for negligence and therefore his claim is **DISMISSED**.

**C. Intentional Infliction of Emotional Distress**

"In order to state a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show that (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the conduct and the emotional distress; and (4) that the emotional distress is severe." Pierri v. Cingular Wireless, LLC, 397 F.Supp.2d 1364, 1381 (N.D. Ga. 2015). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Renton v. Watson, 319 Ga.App. 896, 903 (2013). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Miraliakbari v. Pennicooke, 254 Ga.App. 156, 157 (2002).

Plaintiff contends that his prolonged detention without bail caused severe and permanent emotional distress, "which includes devastating impact to his psyche, his relationships with his family, his health, and his overall well-being." Doc. 1 ¶ 69. Plaintiff suffers from serious medical conditions, which while in custody were not treated adequately by the prescribed medical diet. Id. ¶ 55, 56. Additionally, his prolonged detention during his family's murders deprived him of the right to grieve appropriately. Id. ¶ 57. This case is similar to Cho v. United

<u>States</u> in that the plaintiff recounted inadequate medical treatment during her detention, but also suffered from extreme temperatures in imprisonment and assault while in detention. No. 5:13-CV-153 (MTT), 2016 WL 1611476 at *9 (M.D. Ga. 2016). In that case, this Court failed to uphold a claim for intentional infliction of emotional distress because it did not rise to the level of egregiousness necessary to sustain a claim under Georgia law. <u>Id.</u> Accordingly, this Court finds that Plaintiff's claim for intentional infliction of emotional distress also fails to rise to that level and it is **DISMISSED**.

**CONCLUSION**

The Government's Motion to Dismiss (Doc. 5) is **GRANTED**.

**SO ORDERED** this 27th Day of September, 2021.

<u>*s/ Hugh Lawson*</u>
**HUGH LAWSON, SENIOR JUDGE**